UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHRISTOPHER DEVOLVE,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>Defendant. | No. 1:16-CV-3063-JTR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 16, 17. Attorney D. James Tree represents Christopher Devolve (Plaintiff); Special Assistant United States Attorney Jeffrey E. Staples represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 10. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) in April 2012, alleging disability since

ORDER GRANTING DEFENDANT'S MOTION . . . . - 1

January 1, 2009, due to post traumatic stress disorder (PTSD), high blood pressure, severe depression, anxiety, nightmares, rage/anger issues, high cholesterol and gout. Tr. 239, 243, 266. Plaintiff's applications were denied initially and upon reconsideration.

Administrative Law Judge (ALJ) Ruperta M. Alexis held a hearing on June 5, 2014, Tr. 42-68, and issued an unfavorable decision on August 28, 2014, Tr. 20-32. The Appeals Council denied review on February 19, 2016. Tr. 1-6. The ALJ's August 2014 decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on April 19, 2016. ECF No. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born on July 5, 1975, and was 33 years old on the alleged onset date, January 1, 2009. Tr. 239. He completed school through the eighth grade. Tr. 60, 267. Plaintiff testified at the administrative hearing he previously used methamphetamines on a regular basis but, with the exception of one relapse, quit using street drugs about four years ago. Tr. 46. He also stated he was a chronic marijuana smoker but had been trying to quit. Tr. 46.

Plaintiff testified he last worked at Western Material on a production line and driving a forklift. Tr. 60. Prior to the Western Material job, Plaintiff worked for Rugged Glass Waterfalls and Landscape performing general labor tasks and as a sales associate for Steve Hahn Automotive Sales. Tr. 61. Plaintiff indicated he had also worked at Spinner Wood Products but was laid off during slow season; had worked eight or nine days, 16 to 18 hours a day, during a fishing season in Alaska; and had worked at Fairfield Inn but was not able to keep the job because he failed to get up and go into work. Tr. 52-54.

Plaintiff indicated his primary goal was to beat his mental illness and work like a regular person. Tr. 50. He stated he believed he was ready to work an eight hour a day, five day a week job without missing work. Tr. 55. However, Plaintiff related that his primary problem with keeping a job was, following a bad night, he would not show up for work or be late and fail to call in. Tr. 63.

Plaintiff testified he last participated in mental health treatment in 2012 following a hospitalization. Tr. 55-56. He indicated he was treated with medications while he was hospitalized and had the best sleep he had experienced during the previous 25 years. Tr. 56. After his April 2012 discharge from the hospital, he continued to take the prescribed medications until his medical coverage ran out in October of 2012. Tr. 56-57.

Plaintiff stated when he is not working and in the right frame of mind, he is the primary caregiver for his four children, ages 17, 14, 11 and nine. Tr. 57. He indicated he helps his children practice their sports, coaches their teams, and attends their games. Tr. 59. While his children are at school, Plaintiff will try to clean around his house and do some laundry. Tr. 58-59.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one

rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the claimant has the burden of establishing a prima facie case of disability. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On August 28, 2014, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date, January

1, 2009. Tr. 22. At step two, the ALJ determined Plaintiff had the following severe impairments: bipolar disorder, NOS; PTSD; history of substance abuse; arthropathies; obesity; and hypertension. Tr. 23. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 25.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and determined he could perform light exertion level work, except he could frequently stoop, kneel, crawl and climb ramps and stairs; could not climb ladders, ropes and scaffolds; could not operate dangerous equipment; and could only perform simple, routine tasks with no interaction with the public, but could interact and work in proximity with co-workers. Tr. 26.

At step four, the ALJ found Plaintiff was unable to perform his past relevant work. Tr. 31. However, at step five, the ALJ determined that, considering Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert, Plaintiff could perform other jobs present in significant numbers in the national economy, including the jobs of production assembler, packing line worker and cashier II. Tr. 32. The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from January 1, 2009, the alleged onset date, through the date of the ALJ's decision, August 28, 2014. Tr. 32.

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff contends the ALJ erred by (1) failing to fully and fairly develop the record with respect to his psychological condition; (2) failing to properly evaluate the medical opinion evidence of record regarding his psychiatric symptoms; and (3) discredited his symptom testimony.

# DISCUSSION

**A.    Plaintiff's Symptom Testimony**

Plaintiff contends the ALJ erred by failing to provide valid reasons for finding him not fully credible in this case.  ECF No. 16 at 17-20.

It is the province of the ALJ to make credibility determinations.  *Andrews*, 53 F.3d at 1039.  However, the ALJ's findings must be supported by specific cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing."  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  "General findings are insufficient:  rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible.  Tr. 28.

The ALJ first noted the medical evidence showed significant improvement in Plaintiff's symptoms of poor sleep, rage, hitting himself and hearing voices when he was on medication.  Tr. 28.  An ALJ may rely on the effectiveness of treatment to find a plaintiff's testimony unpersuasive.  20 C.F.R. § 416.929(c)(3)(iv) (indicating the effectiveness of medication in alleviating pain and other symptoms is a relevant factor to consider in evaluating the severity of a claimant's symptoms); *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (an ALJ may properly rely on a report that a plaintiff's mental symptoms improved with the use of medication); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (noting impairments that are controlled by treatment cannot be considered disabling).  The record reflects that while Plaintiff required

hospitalization in March 2012, possibly related to a methamphetamine drug relapse, Tr. 29-30, 46, the record shows his mental health symptoms quickly improved when he was taking prescribed medications, Tr. 699.  In fact, on June 28, 2012, Plaintiff reported he was doing well and that he believed his medications were "working good."  Tr. 573.  The Court finds Plaintiff's substantial improvement with medication is a clear and convincing reason for discounting Plaintiff's credibility.

The ALJ also mentioned Plaintiff's reported activities were inconsistent with Plaintiff's claim of disabling symptoms.  Tr. 28.   It is well-established that the nature of daily activities may be considered when evaluating credibility.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  On mental status examination in March 2012, and again at the administrative hearing, Plaintiff indicated he actively cared for his four children and would perform household chores.  Tr. 57-59, 363.  Plaintiff testified that, in addition to getting his children prepared for school each day, he helped them practice their various sports, coached their teams, and attended their games.  Tr. 59.  Plaintiff further indicated that while his children are at school, he would try to clean around his house and do some laundry.  Tr. 58-59.  The ALJ properly found that such activities were inconsistent with Plaintiff's alleged limitations and thus detracted from his credibility.

The ALJ next indicated medical records show that Plaintiff had poor treatment compliance.  Tr. 28.  Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints.  20 C.F.R. §§ 404.1530, 426.930; *Fair*, 885 F.2d at 603.  As noted by the ALJ, the record reflects Plaintiff had multiple failures to attend therapy which eventually resulted in his discharge from treatment.  Tr. 28, 618, 620-621.  Plaintiff's failure to comply with the prescribed course of medical treatment discounts his claim of disabling pain and limitations.  While a claimant's failure to follow a course of treatment may be excused if the claimant

cannot afford the treatment, *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995), the record reflects that Plaintiff was discharged from treatment due to no-shows, not due to a lack of medical coverage as alleged by Plaintiff. Tr. 28, 618.

The ALJ additionally indicated the record reflected Plaintiff was able to work many short term jobs from 2003 to 2005, a period of time well before the alleged onset date (January 1, 2009). Tr. 27, 761. Employment **after** the alleged onset of disability date may be a factor in an ALJ's credibility determination. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219 (9th Cir. 2009) (finding that "[t]he ALJ made specific findings in support of his decision to discount [plaintiff's] testimony," including that plaintiff "recently worked as a personal caregiver for two years [after her disability onset date], and has sought out other employment since then"). Although the Social Security Regulations provide that employment during any period of claimed disability may be probative of a claimant's ability to work, *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002), the dates of employment cited by the ALJ predate the alleged onset date by several years. Accordingly, it was not proper for the ALJ to find Plaintiff's ability to work from 2003 to 2005 inconsistent with his complaints of disabling symptoms. Nevertheless, given the ALJ's other reasons for finding Plaintiff less than fully credible, as indicated above, the Court finds this error harmless. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1160, 1163 (9th Cir. 2008) (upholding adverse credibility finding where ALJ provided four reasons to discredit claimant, two of which were invalid); *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (affirming credibility finding where one of several reasons was unsupported by the record).

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. The Court has a limited role in

determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon *de novo* review. 42 U.S.C. § 405(g). After reviewing the record, the Court finds that the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective complaints, which are fully supported by the record. Accordingly, the ALJ did not err by finding Plaintiff's allegations were not entirely credible in this case.

**B.     Medical Source Opinions**

Plaintiff contends the ALJ also erred by failing to properly evaluate the medical opinions of record. ECF No. 16 at 8-17. Specifically, Plaintiff asserts the ALJ mischaracterized the opinion of Dr. Moon, should have accorded greater weight to the "other source" opinions of Mr. Clark and Mr. Moen,[1] and failed to consider the opinion of Dr. Eisenhauer. *Id.*

The ALJ determined Plaintiff retained the RFC to perform a range of light exertion-level work. Tr. 26. The ALJ found that Plaintiff had the added non-exertional limitations of being able to only perform simple, routine tasks with no interaction with the public. *Id.* The Court finds the ALJ's interpretation of the medical record is supported by substantial evidence. *See infra*.

**1.     Dr. Moon**

Plaintiff argues the opinion of Tae-Im Moon, Ph.D., does not support the ALJ's RFC determination. ECF No. 16 at 15-16.

///

---

[1] Psychiatrist Philip Rodenberger, M.D., signed the reports generated by Mr. Clark and Mr. Moen. Tr. 371, 493. Although non-physicians working under supervision are to be treated as teams, *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996), there is no evidence that Mr. Clark and Mr. Moen regularly consulted with or were closely supervised by Dr. Rodenberger.

ORDER GRANTING DEFENDANT'S MOTION . . . - 9

Dr. Moon evaluated Plaintiff on March 1, 2012.  Tr. 362-366.  Dr. Moon diagnosed Plaintiff with bipolar disorder, NOS, and PTSD and gave Plaintiff a GAF score in the mid-50s, indicative of moderate symptoms.  Tr. 362-363.  Dr. Moon noted Plaintiff reported using methamphetamines from the ages of 21 to 31 but, apart from a recent relapse, had remained clean.  Tr. 363.  Plaintiff reported to being able to care for his four children and perform routine household chores.  Tr. 363.  Plaintiff helped his children get prepared for school every morning and took them to the bus stop; he did chores around the house and prepared dinner; he took his children to a boxing program, basketball practices and baseball games; and he helped coach his children's baseball and basketball teams.  Tr. 363.  As noted by the ALJ, Dr. Moon's mental status exam revealed Plaintiff had normal eye contact, a cooperative attitude, and appropriate speech; his mood was depressed; he had no delusions or hallucinations; his stream of mental activity was logical and coherent; he was oriented and had good recent, remote and immediate memory; he performed 2 steps of a 3-step task; he had a poor fund of knowledge; he counted accurately by 3s and completed 6 digits forward on digit span; and he spelled "world" backwards correctly.  Tr. 29, 364-365.

The ALJ credited Dr. Moon's examination findings, noting Plaintiff's reported activities reflected a fairly high functional ability.  Tr. 29.  The Court finds Dr. Moon's report is supported by the evidence of record, including Plaintiff's hearing testimony[2] and the opinions of the reviewing state agency psychiatric consultants.[3]  Dr. Moon's findings are consistent with the ALJ's RFC determination that Plaintiff was capable of performing simple, routine tasks.

---

[2]As indicated above, Plaintiff testified at the administrative hearing that he actively cared for his four children and performed household chores.  Tr. 57-59

[3]In May 2012, Thomas Clifford Ph.D., found Plaintiff had the capacity to remain productive completing simple repetitive tasks, was capable of working in a

ORDER GRANTING DEFENDANT'S MOTION . . . - 10

### 2. Mr. Clark

Plaintiff contends that the ALJ erred by failing to provide appropriate rationale for discounting the opinions of Christopher Clark, M.Ed., L.M.H.C.

On November 12, 2010, Mr. Clark completed a Psychological/Psychiatric Evaluation form. Tr. 489-493. He diagnosed Plaintiff with Bipolar I Disorder, depressed, moderate and Polysubstance Dependence, in reported remission, and opined Plaintiff had several moderate and marked mental limitations. Tr. 490-491. However, Mr. Clark indicated that mental health intervention was likely to restore or substantially improve Plaintiff's ability to work, noting that Plaintiff may be able to return to his usual occupation in car sales or as an apiarist with sufficient structured psychoeducational treatment and pharmaceutical therapy. Tr. 492.

Mr. Clark is not an "acceptable medical source." Only licensed physicians and certain other qualified specialists are considered "acceptable medical sources." 20 C.F.R. § 404.1513(a) (acceptable medical sources include only licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists and qualified speech-language pathologists). Therefore, Mr. Clark's opinions do not qualify as "medical evidence . . . from an acceptable medical source" as required by the Social Security Regulations. 20 C.F.R. §§ 404.1513, 416.913. Mr. Clark is an "other source," and an ALJ may discount testimony from "other sources" if she "'gives reasons germane to each witness for doing so.'" *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (quoting *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)).

---

competitive employment situation requiring no more than superficial interaction with others, and was capable of completing goals set by others and learning new, simple work tasks or changes. Tr. 80. On August 23, 2012, Eugene Kester, M.D., affirmed Dr. Clifford's May 2012 findings. Tr. 122. The ALJ accorded "great weight" to the opinions of these state agency consultants. Tr. 30.

The ALJ accorded the evaluation report of Mr. Clark "little weight" because it was inconsistent with the longitudinal record regarding Plaintiff's memory and concentration and inconsistent with Plaintiff's documented daily activities. Tr. 30. While Mr. Clark opined that Plaintiff was markedly limited due to "poor memory and concentration functions," Tr. 491, Dr. Moon's mental status exam revealed Plaintiff's stream of mental activity was logical and coherent, he was oriented, and he had good recent, remote and immediate memory, Tr. 364-365. Furthermore, as noted by the ALJ, Mr. Clark's assessed marked limitation in maintaining appropriate behavior is inconsistent with Plaintiff's reported engagement in activities with his children, including coaching their sport teams. Tr. 30. The Court finds the ALJ provided germane reasons for giving little weight to Mr. Clark's opinions.

### 3.     Mr. Moen

Plaintiff also contends that the ALJ erred by failing to provide appropriate rationale for discounting the opinions of Dick Moen, M.S.W.

Mr. Moen completed a Psychological/Psychiatric Evaluation form on June 22, 2011. Tr. 367-371. Mr. Moen diagnosed Plaintiff with Bipolar I, mixed, and opined that Plaintiff had moderate and marked mental limitations. Tr. 368-369. With respect to the moderate and marked limitations, it was consistently observed by Mr. Moen that Plaintiff's boredom with the task resulted in the assessed functional limitation. Tr. 369. Mr. Moen also marked "no" on the sections of the report asking whether there was an indication of current or recent alcohol or substance use and whether there was any diagnosis of substance abuse or dependence. Tr. 369.

Mr. Moen, a therapist, is not an acceptable medical source, and his opinions may be discounted by an ALJ with germane reasons. *Turner*, 613 F.3d at 1224. The ALJ accorded the evaluation report of Mr. Moen "limited weight" because boredom is not a medically determinable impairment and the findings were not

consistent with the longitudinal record and documented activities of Plaintiff. Tr. 30.

Mr. Moen reported Plaintiff had a restricted ability to complete complex instructions or learn new tasks because he "[g]ets bored." Tr. 369. Mr. Moen indicated that "[b]oredom with the task is the issue" for Plaintiff. *Id*. The ALJ reasonably concluded Mr. Moen found that Plaintiff's boredom, not a medically determinable impairment, caused Plaintiff's functional limitations. This is a germane reason to discount Mr. Moen's findings of significant functional restrictions. Furthermore, as noted with respect to Mr. Clark, Plaintiff's reported engagement in activities with his children, including coaching their sport teams, is inconsistent with the assessed functional limitations. The Court finds the ALJ provided germane reasons for according limited weight to Mr. Moen's June 2011 report.

### 4.   Dr. Eisenhauer

Plaintiff asserts the ALJ additionally erred by failing to discuss the report of R. Renee Eisenhauer, Ph.D.

Dr. Eisenhauer reviewed the medical reports of Dr. Moon, Mr. Moen and Mr. Clark and briefly described the opinions of those medical professionals. Tr. 591. Dr. Eisenhauer noted the medical reports reflected Plaintiff was oriented, average in intellect, had intact memory and concentration, and concrete thinking in 2011 and, in March 2012, Plaintiff's activities of daily living were intact, he was able to care for his children, do chores, run errands and prepare meals, and his cognitive functioning remained intact. Tr. 591. Dr. Eisenhauer checked a box indicating the assigned severity and functional limitations were consistent with the medical evidence. *Id*.

Although the ALJ's opinion did not mention the report of Dr. Eisenhauer, nothing in Dr. Eisenhauer's report, as summarized above, contradicts the ultimate RFC determination by the ALJ. Consequently, any error based on the ALJ's

failure to address the report of Dr. Eisenhauer is harmless. *See Johnson v. Shalala*, 60 F.3d 1428, 1436 n. 9 (9th Cir. 1995) (an error is harmless when the correction of that error would not alter the result). An ALJ's decision will not be reversed for errors that are harmless. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citing *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991).

Based on the foregoing, the Court finds the ALJ did not err in her assessment of the medical evidence of record. The ALJ did not commit reversible error by credited Dr. Moon's findings, noting Plaintiff's reported activities reflected a fairly high functional ability; according little weight to the "other source" opinions of Mr. Clark and Mr. Moen; and by failing to address the report of Dr. Eisenhauer. The ALJ's RFC determination is in accord with the weight of the record evidence and free of legal error.

**C.  Develop the Record**

Plaintiff also contends the ALJ erred by failing to fully and fairly develop the record. ECF No. 16 at 6-8. Plaintiff argues the ALJ should have ordered a psychological consultative exam because the evidence in the record was not sufficient to support a determination regarding his impairments. *Id*.

In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel. *Tonapetyan*, 242 F.3d at 1150; *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). However, it is Plaintiff's duty to prove he is disabled. 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."). The Code of Federal Regulations explains:

> [y]ou have to prove to us that you are blind or disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled . . . . This duty is ongoing and requires you to disclose

any additional related evidence about which you become aware. This duty applies at each level of the administrative review process. . . . We will consider only impairment(s) you say you have or about which we receive evidence.

20 C.F.R. § 404.1512(a).

An ALJ's duty to develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Tonapetyan*, 242 F.3d at 1150. As discussed above, the ALJ's RFC determination is in accord with the weight of the record evidence and free of legal error. The record before the ALJ was neither ambiguous nor inadequate to allow for proper evaluation of the evidence. Accordingly, the ALJ did not err by failing to order a consultative examination to further develop the record with respect to Plaintiff's mental health.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly, **IT IS ORDERED:**

    1.    Defendant's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.

    2.    Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

DATED July 18, 2017.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE